**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, <br><br> *Plaintiff,* <br><br> v. <br><br> CSX TRANSPORTATION, <br><br> *Defendant.* | No. 2:25-cv-01892-GAW |

<u>**MEMORANDUM**</u>

The subject of this lawsuit is a dispute between a rail carrier and a labor union concerning a collective bargaining agreement. CSX Transportation (CSXT) is "a Class I rail carrier, which operates an interstate rail network in 26 states, the District of Columbia, and the Canadian provinces of Ontario and Quebec." Joint Statement of Undisputed Facts (Dkt. 36) at ¶ 1. The Brotherhood of Locomotive Engineers and Trainmen (BLET) is "a labor organization that represents railroad employees, including locomotive engineers employed by CSXT." *Id.* at ¶ 2. The parties entered into a collective bargaining agreement entitled "System Agreement CSXT No. 1-023-07" (Agreement). *See id.*, Exhibit 1.

The Agreement became the focus of a dispute following a 2024 CSXT project to "reconstruct the Howard Street Tunnel in Baltimore, Maryland." Joint

Statement at ¶ 5.  The tunnel runs for nearly two miles under the City of Baltimore, and "is used by CSXT to move trains between major cities such as Washington, D.C., Philadelphia, and New York, as well as the Port of Baltimore and destinations on the east coast and throughout the Midwest."  *Id.* at ¶ 6.  As a result of the project, the tunnel was closed to freight rail traffic for periods of time.  *Id.* at ¶ 7.

To ameliorate the effects of these closures, CSXT took advantage of a "Master Trackage Rights Agreement" it signed in 2002 with Norfolk Southern Railway Company (NSR), another Class I railroad.  *Id.* at ¶ 8; *id.*, Exhibit 2.  CSXT and NSR agreed to addendums in 2024, granting "CSXT rights to operate over approximately 150 miles of rail line owned by NSR in Maryland and Pennsylvania[.]"  *Id.* at 9.

In order to operate over NSR's unfamiliar rail lines, CSXT engineers had to qualify.  Articles 61 and 63 of the Agreement are relevant here.  Article 61 deals with qualifying engineers on new territory.  *See id.*, Exhibit 1 at 101 ("Where a new run is established requiring Engineers to learn new territory they will be paid for the time learning the road at the Engineers rate of pay.").  Article 63, in turn, concerns "pilots."[1]    It provides that "[o]nly qualified [Federal Railroad Administration] certified Engineers whose names appear on an active roster will be used as pilots for other Engineers and will be paid the same rate of pay as the Engineer handling the assignment."  Joint Statement, Exhibit 1 at 103.  In other words, only BLET union members can serve as pilots.

As a part of the process of qualifying engineers to operate over the new

---

[1]    "In railroading, pilots assist engineers operating over unfamiliar territory, such as during unexpected detours."  Motion for Summary Judgment (CSXT Motion) (Dkt. 35) at 4.

territory, each engineer needed to complete multiple training trips in the company of a CSXT supervisor.  Declaration of Steve Ammons (Declaration) (Dkt. 37) at ¶ 13.

This requirement is what led to the conduct challenged in this suit. According to BLET, CSXT "simply ignored" the plain language of the Agreement when it used CSXT supervisors to qualify engineers.  Complaint (Dkt. 1) at ¶ 3. BLET maintains that only "pilots" can be used to familiarize engineers on a new stretch of track. *Id.* at ¶ 10.

CSXT, conversely, argues that "the disputed incident is more properly viewed as 'qualifying' over new territory under Article 61 than 'piloting' under Article 63." CSXT Motion at 2.  CSXT emphasizes that neither Article 61 nor Article 63 requires that pilots be used for engineer qualification.  *Id.*  Steve Ammons, the CSXT employee who oversees "policies for certifying and qualifying locomotive engineers," made a declaration detailing how he would testify if called as a witness in this matter.  Declaration at ¶ 1.  He explained that "in the rail industry, 'piloting' is often used as a general term, sometimes interchangeably with parts of the qualification process.  However, that does not mean those supervisors were 'piloting' those trains under Article 63 of the CSXT-BLET collective bargaining agreement." Declaration at ¶ 19.  He elaborated on the distinction between piloting and qualifying, explaining why the two roles differ:

> When a supervisor rides in the cab to observe and score an engineer for our certification program, the supervisor is qualifying, not piloting. This is shown by the fact that "pilots" – who are seniority-list employees – may not and do not score other seniority-list engineers on their skills for qualification and certification.  An employee doing "piloting" would not complete the Locomotive Engineer Evaluation

Report or log their observations and scores into CSXT's tracking system; only a supervisor can do those tasks. Similarly, the Engineer Evaluation Form is used for the qualification and certification process. So, the supervisors here were not acting as pilots, and calling the trips "pilot" was just a loose use of railroad terms.

*Id.*[2]

CSXT filed a Motion for Summary Judgment, seeking dismissal of BLET's complaint for lack of jurisdiction. CSXT Motion at 25. BLET filed a Cross Motion for Summary Judgement, requesting denial of CSXT's Motion, judgment in its favor and against CSXT, a declaration that this is a "Major Dispute," and a permanent injunction barring CSXT from assigning management employees as pilots. Combined Motion for Summary Judgment and Opposition to Defendant's Motion (BLET Motion) (Dkt. 39) at 21. For the reasons that follow, the Court grants CSXT's Motion and denies BLET's Motion.

Courts will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Yet because this is a railroad labor dispute, there is an antecedent jurisdictional question under the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188.

There are two types of disputes that can arise under the RLA: major disputes and minor disputes. *Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc.*, 358 F.3d 255, 259 (3d Cir. 2004) (*U.S. Airways*). Properly classifying the dispute is important, because a "minor dispute in the railroad industry is subject to

---

[2] The Court makes no determination about the veracity of these statements. They are merely included to illustrate CSXT's contentions.

4

compulsory and binding arbitration before the National Railroad Adjustment Board, or before an adjustment board established by the employer and the unions representing the employees." *Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 303 (1989) (*Conrail*) (citations omitted).  These adjustment boards have "exclusive jurisdiction over minor disputes." *Id.* at 304.

The distinction between the two types of disputes "does not turn on a case-by-case determination of the importance of the issue presented or the likelihood that it would prompt the exercise of economic self-help." *U.S. Airways*, 358 F.3d at 260 (citing *Conrail*, 491 U.S. at 305).  Rather, "major disputes seek to create contractual rights, while minor disputes seek to enforce them." *Id.* (citing *Conrail*, 491 U.S. at 302).

More specifically, major disputes "relate to the formation of collective bargaining agreements or efforts to secure them.  They arise in the absence of such an agreement or where a party seeks to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy." *Id.*  Minor disputes, on the other hand, "arise out of grievances or out of the interpretation or application of existing collective bargaining agreements.  The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation[.]" *Id.* (citation omitted).  A dispute is minor when the employer's action "arguably is justified by the implied or express terms of the parties collective bargaining agreement." *Id.*  When the employer's claimed justification is "frivolous or obviously insubstantial, the dispute is a major one." *Id.* (citations omitted).

As the Supreme Court has articulated the standard, if the employer's claim is "arguably justified by the terms of the parties' agreement (*i.e.*, the claim is neither obviously insubstantial or frivolous, nor made in bad faith)," then courts "must defer to the arbitral jurisdiction of the Board." *Conrail*, 491 U.S. at 310. To clear that threshold, the employer's burden is a "relatively light" one. *Id.* at 307 (citation omitted).

In other words, when making the "choice between major and minor, there is a large thumb on the scale in favor of minor, and hence arbitration." *Bhd. of Locomotive Eng'rs & Trainmen (Gen. Comm. of Adjustment, Cent. Region) v. Union Pac. R.R. Co.*, 879 F.3d 754, 758 (7th Cir. 2017); *see also McQuestion v. New Jersey Transit Rail Operations, Inc.*, 30 F.3d 388, 391 (3d Cir. 1994) ("Whenever there is doubt as to whether a particular dispute is a 'major' or a 'minor' one, courts will construe the dispute to be 'minor.'" (citation omitted)).

Finally, it is important to note that "[w]hen a railroad labor dispute reaches a federal court, [the court's] central responsibility is that of taxonomist—classifying the dispute as major or minor." *BLET GCA UP v. Union Pac. R.R. Co.*, 988 F.3d 409, 413 (7th Cir. 2021) (citation and quotation marks omitted). This limited role means that a court "may not consider the merits of the underlying dispute[.]" *U.S. Airways*, 358 F.3d at 260 (citation omitted). Therefore, the only question for this Court is whether CSXT's position is arguably justified or whether it is frivolous.

Here, CSXT has met its burden. This Court concludes that CSXT's position is "arguably justified by the terms of the parties' agreement[,]" meaning that the

claim is "neither obviously insubstantial or frivolous, nor made in bad faith[.]" *See Conrail*, 491 U.S. at 310. As described above, the relevant provisions in the Agreement do not state that pilots must be used to qualify engineers. "[W]hat the agreements do not forbid … the railroad is allowed to do as a matter of contract[.]" *Chicago & N. W. Transp. Co. v. Ry. Lab. Executives' Ass'n*, 908 F.2d 144, 153 (7th Cir. 1990).

Additionally, CSXT intends to introduce evidence suggesting that piloting and qualifying are different functions, and that its pilots do not facilitate qualification. *See, e.g.*, Declaration at ¶ 19. These at least *arguable* justifications suffice to meet CSXT's light burden under the RLA. Of course, this Court does not take a position regarding whether CSXT will ultimately prevail on the merits of its claim.

Lastly, the Court observes that distinguishing between piloting and qualifying is a fact-intensive question unique to this industry. This is precisely the sort of issue that the adjustment board is best positioned to address, given its specialized industry expertise. Indeed, Congress's decision in the RLA to invest "the Adjustment Board with the broad power to arbitrate grievances" demonstrates it "plainly intended that interpretation of these controversial provisions should be submitted for the decision of railroad men, both workers and management, serving on the Adjustment Board with their long experience and accepted expertise in this field." *Gunther v. San Diego & A. E. Ry. Co.*, 382 U.S. 257, 261–62 (1965).

In sum, CSXT's position is arguably justified. It is neither obviously

insubstantial or frivolous, nor made in bad faith.  Consequently, the dispute is minor, and this Court lacks jurisdiction to consider it.[3]

An appropriate order follows.


DATED: July 23, 2026                                   BY THE COURT:

_____

Gail A. Weilheimer, J.

---

[3] Because this resolves the motions before the Court, there is no need to address CSXT's other argument that BLET's "claim should be dismissed for the independent reason that it arises from CSXT's implementation of [a Surface Transportation Board]-authorized trackage rights agreement." *See* CSXT Motion at 3.